UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARYL COOK,** | : | |
| Plaintiff | : | CIV. ACTION NO. 3:23-CV-1046 |
| v. | : | (JUDGE MANNION) |
| **CHIEF GRIEVANCE OFFICER,** *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court in this prisoner civil rights case are defendants' motions to dismiss plaintiff's amended complaint. For the reasons set forth below, the motions will be granted, and this case will be dismissed.

I. **BACKGROUND**

Plaintiff, Daryl Cook, who has been incarcerated in Coal Township State Correctional Institution ("SCI-Coal Township") at all relevant times, brings the instant case pursuant to 42 U.S.C. §1983, alleging civil rights violations arising from the treatment of his cataracts and other vision conditions. Cook filed his original complaint on June 20, 2023, and the court received and docketed the complaint on June 23, 2023. (Doc. 1). Cook additionally moved for leave to proceed *in forma pauperis*. (Doc. 6).

On August 9, 2023, the court denied the motion for leave to proceed *in forma pauperis*, finding that Cook is barred from proceeding *in forma pauperis* because he has "three strikes" pursuant to 28 U.S.C. §1915(g). (Doc. 10). The court ordered Cook to pay the requisite filing fee no later than September 5, 2023. (*Id.*) Cook did so on October 5, 2023. (Doc. 13).

On December 1, 2023, the court granted Cook's motion for leave to amend and docketed his amended complaint. (Docs. 23-24). The amended complaint, which incorporates all allegations made in the original complaint as well as adding additional allegations, remains the operative pleading.

According to the allegations in the amended complaint, Cook requested medical care in April 2022 because he was experiencing blurred vision. (Doc. 24 at 13). Cook was referred for an appointment on an unspecified date with defendant Eric Jarrett ("Jarrett"), a physician employed at an outside medical center in Williamsport, Pennsylvania. (*Id.* at 2, 14).[1] Jarrett prescribed Cook medication and new eyeglasses to treat the blurry vision. (*Id.* at 14). When the medication and new eyeglasses did not resolve the issue, Jarrett prescribed him new eyeglasses and different medication

---

[1] The original complaint identified this defendant as John Doe, but the amended complaint has identified him as Jarrett. (*See* Doc. 24 at 2).

on another unspecified date. (*Id.*) Jarrett also purportedly diagnosed Cook with cataracts, which he stated were caused by Cook's advanced age. (*Id.*)

On February 3, 2023, Cook submitted an inmate request to staff member to the health care administrator of SCI-Coal Township, requesting that he be seen by a different eye specialist than Jarrett based on Jarrett's failure to resolve his blurry vision through the prescribed medications and eyeglasses during the previous two visits. (*Id.*) The healthcare administrator denied the request but stated that an on-site doctor could review his prescriptions. (*Id.* at 15). Cook subsequently filed grievances requesting damages to compensate him for the allegedly deficient care he was receiving for his vision problems. (*Id.* at 15-16).

After Cook filed the grievances, he was referred for another appointment with Jarrett. (*Id.*) Jarrett diagnosed Cook as having cataracts, but he concluded that they were "not bad enough for [Cook] to need them

removed."[2] (*Id.* at 16). Jarrett also noted that light exposure may be causing Cook's blurred vision. (*Id.*) He prescribed him new medication and two pairs of eyeglasses to treat the blurred vision. (*Id.*) Upon receiving the prescription from Jarrett, however, an SCI-Coal Township employee purportedly stated that DOC policy prohibited physicians from prescribing two different pairs of eyeglasses and accordingly amended the prescription to give Cook a pair of bifocals that would incorporate both prescriptions. (*Id.* at 17). Cook received the pair of bifocals on April 1, 2023, but the bifocals again did not resolve his blurry vision. (*Id.*) Jarrett allegedly appealed his grievances through the DOC's grievance process but was denied relief at all levels. (*Id.* at 17-18).

---

[2] Cook has subsequently attempted to retract this statement in one of his briefs in opposition to the motions to dismiss. (*See* Doc. 51 at 3). Cook represents that he may have misremembered the content of this conversation with Jarrett and that the statement may have actually been made by a different doctor working at SCI-Fayette several years before this conversation. (*Id.*) This retraction does not alter the court's analysis because a complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In any event, even if the court disregarded this allegation in the amended complaint, this would not alter the court's ultimate conclusion that Cook has failed to state a deliberate indifference claim against Jarrett upon which relief may be granted because the allegations in the amended complaint establish that Jarrett was exercising professional judgment in the medical care he provided to Cook.

Cook's blurry vision allegedly had not improved by June 2023, so he submitted another request for medical attention on June 7, 2023.[3] (*Id.* 18-19). An employee in the prison medical department saw Cook for an appointment on June 8, 2023. (*Id.* at 19). The employee stated that Cook would be placed on a call-out list to see an eye specialist, and noted that Cook's medical records did not indicate Jarrett's previous diagnosis that he had cataracts. (*Id.*) The employee also stated that Cook was "border-line diabetic," but that this had nothing to do with his vision problems. (*Id.*)

The amended complaint alleges that Cook saw a different eye specialist on September 19, 2023, who diagnosed Cook with cataracts and glaucoma and purportedly stated that he could "save [Cook's] eyesight with surgery." (*Id.* at 6). The amended complaint asserts that Jarrett was deliberately indifferent to Cook's serious medical need in violation of the Eighth Amendment when he failed to properly diagnose or treat Cook's cataracts and glaucoma during his various visits with Cook. (*Id.*) The amended complaint asserts that all other named defendants are responsible

---

[3] The amended complaint additionally alleges that Cook requested a colonoscopy and an MRI to examine the causes of "blood coming from [his] rectum" and "pain in [his] left lower side of [his] back," (*see id.* at 19), but it does not appear that Cook asserts any claims based on these facts. The amended complaint additionally states that the cause of the bleeding was diagnosed as hemorrhoids and that Cook was prescribed medication to treat the hemorrhoids. (*Id.* at 20).

for Jarrett's actions either because they held professional roles in which they were required to supervise Jarrett or because they responded to Cook's letters, grievances, and associated appeals complaining about the medical care Jarrett was providing. (*See* Doc. 24 at 1-10).

Defendants moved to dismiss the amended complaint through three separate motions on February 2, 2024, February 5, 2024, and March 5, 2024. (Docs. 37-38, 47). Briefing on all three motion is complete, and they are ripe for review. (*See* Docs. 40, 43, 49, 51, 53, 55).[4] Cook has additionally filed two motions for "emergency relief," which request several forms of preliminary injunctive relief. (Docs. 48, 50).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

---

[4] Plaintiff's motion for extension of the associated briefing deadlines is also pending. (Doc. 44). Although the motion only purports to extend the briefing deadlines related to two of the three motions, the court will liberally construe the motion as seeking to extend the deadline to respond to all three motions to dismiss due to plaintiff's pro se status. The court finds that plaintiff has shown good cause for the requested extension and will grant the motion. All briefs plaintiff has filed in opposition to the motions to dismiss are deemed timely filed and have been considered on their merits.

6

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. DISCUSSION

#### A. Motion to Dismiss

As noted above, all named defendants have moved to dismiss the amended complaint. (*See* Docs. 37-38, 47). Because Cook's claims against all other defendants are derivative of his claims against defendant Jarrett, the court will first analyze the claims against Jarrett.

The gravamen of Cook's claims against Jarrett are that Jarrett was deliberately indifferent to a serious medical need in violation of the Eighth Amendment when he failed to properly diagnose or treat Cook's cataracts or glaucoma during several appointments in 2022 and 2023. To state a claim for deliberate indifference, a plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A plaintiff's mere disagreement as to the proper medical treatment" is not sufficient to support a deliberate indifference claim. *Lanzaro*, 834 F.2d at 346.

The deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and courts must accordingly "'disavow any attempt to second-guess the propriety or adequacy of their particular course of treatment' so long as it 'remains a question of sound professional judgment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). A claim that "a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (quoting *Estelle*, 429 U.S. at

106). Thus, claims that a physician has "inadequately diagnosed and treated" a plaintiff's medical condition does not amount to a violation of the Eighth Amendment if the physician was exercising his professional judgment in his diagnosis and treatment. *Id.*

The court finds that Cook's amended complaint fails to state a deliberate indifference claim upon which relief may be granted against Jarrett. Accepting the allegations in the amended complaint as true, the complaint shows that Jarrett provided medical treatment to Cook for his blurry vision on at least three separate occasions, that he diagnosed the blurry vision as a symptom of Cook's cataracts, and that he attempted to treat the blurry vision with several different prescriptions for medication and eyeglasses. The amended complaint alleges that Jarrett failed to properly diagnose the need for surgery and failed to diagnose Cook's glaucoma, but it is clear from the amended complaint that Jarrett was exercising his professional judgment when he allegedly committed these failures. Thus, because Jarrett was exercising his professional judgment, the amended complaint at most alleges that he was "negligent in diagnosing or treating a medical condition," which is not sufficient to state a claim for violation of the Eighth Amendment. *Pearson*, 850 F.3d at 538. Similarly, Cook's disagreement with Jarrett's treatment decisions is not sufficient to state a

deliberate indifference claim. *Lanzaro*, 834 F.2d at 346. The court will accordingly dismiss the deliberate indifference claim against Jarrett.

The constitutional claims against all other defendants will likewise be dismissed for failure to state a claim because they are all named as defendants based on their purported failure to supervise Jarrett or adequately respond to grievances complaining about his care.[5] The other defendants cannot be faulted for failing to intervene in an alleged constitutional violation by Jarrett when Jarrett's underlying conduct did not itself violate the constitution.

### B.  Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. The court will deny leave to amend Cook's constitutional claims as futile. It is clear from the four corners of the amended complaint that Jarrett was exercising his professional judgment when he provided

---

[5] To the extent the amended complaint can be liberally construed as asserting claims for denial of Cook's right to freedom of expression, retaliation, denial of access to the courts, violation of the right to "freedom of choice," violation of the Fourth Amendment, violation of the right to equal protection, and violation of the right to due process, (*see* Doc. 24 at 22-23), these claims will also be dismissed because they all appear to arise from defendants' failure to intervene in Jarrett's medical care.

treatment to Cook and that Cook therefore cannot state a deliberate indifference claim upon which relief may be granted, and there does not appear to be any facts that could be added in a second amended complaint that would alter this fact. Because the claims against all other defendants are based on their purported failure to intervene in the alleged constitutional violation by Jarrett, amendment of those claims would likewise be futile.

### C. State Law Claims

Having decided that all federal claims are appropriately dismissed, the court will dismiss the amended complaint to the extent it can be liberally construed as asserting state law claims for medical malpractice or negligence. Under 28 U.S.C. §1367(c), a United States district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c). "In the ordinary course, 'where the claims over which the district court has original jurisdiction are dismissed before trial, the district court *must* decline to decide the pendent state claims. . . . But it need not do so where considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *North Sound Capital LLC v. Merck & Co., Inc.*, 938 F.3d 482, 494 (3d Cir. 2019) (cleaned up) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

In this case, it does not appear that any considerations of judicial economy, convenience, or fairness to the parties would justify deviating from the ordinary course of declining to exercise jurisdiction over Cook's remaining state law claims. The court will accordingly decline to exercise jurisdiction over any state law claims asserted in the amended complaint and dismiss them without prejudice. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits." (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 1728, 182 (3d Cir. 1999))).

## IV. CONCLUSION

For the foregoing reasons, the court will grant defendants' motions to dismiss, dismiss Cook's federal claims with prejudice, dismiss his state law claims without prejudice, and close this case. The court will additionally deny as moot Cook's motions for emergency relief. An appropriate order shall issue.

*s/ Malachy E. Mannion*
**Malachy E. Mannion**
**United States District Judge**

**Dated: August 13, 2024**
23-1046-01